*HEFFINGTON v. MOSER*, No. 922, September Term, 2017

**CIVIL PROCEDURE — MOTION TO STAY — PARALLEL CIVIL AND CRIMINAL PROCEEDINGS — FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION — MARYLAND DECLARATION OF RIGHTS, ARTICLE 19, RIGHT OF ACCESS TO THE COURTS.**

Plaintiff sued defendants, including former employer, for defamation and other torts based on defendants' having reported to the police and others that plaintiff stole from their business while she was employed there. Plaintiff gave a lengthy discovery deposition. A few months later, she was indicted for several crimes, including theft of property from defendant former employer. Initially, the trial in the criminal case was set for a date before the trial date in the civil case, which was specially assigned. On the day of the criminal trial, the State sought a postponement, which was granted, and the criminal trial was moved to two months after the trial date in the civil case. The plaintiff filed a motion to stay the civil case until after the proceedings in the criminal case were concluded, arguing that she could not prove her case without her own testimony and she could not testify without running the risk of incriminating herself. The court denied the stay. At trial, the parties agreed to a process whereby the plaintiff would not call any witnesses, would move for a mistrial, and if that were denied, the defense would move for judgment, which would be granted. After judgment was entered for the defense, an appeal was noted.

*Held*: Judgment vacated. The plaintiff did not acquiesce in the judgment, as the parties agreed to the process that would be followed. The plaintiff did not waive her Fifth Amendment right by testifying in deposition prior to being indicted. The circumstances existing at the time of the deposition—that it was possible that she would be indicted—were different from the circumstances existing at the time of trial—that she had been charged and was in criminal jeopardy.

In deciding whether to grant a stay, the circuit court should have weighed the plaintiff's Fifth Amendment right to remain silent and suffer no penalty for her silence and her Article 19 right to access to the courts against the defendants' right to a timely resolution of the claims against them without harm to their defense. A proper weighing of these factors only would have supported granting the stay. The case had been pending for a little over a year, discovery was completed, and there had been no postponement of the trial date. There was no showing of prejudice to the defense by granting the stay, and without the stay, the plaintiff would suffer the penalty of losing her cause of action and access to the courts in order to protect her Fifth Amendment right to remain silent.

Circuit Court for Prince George's County
Case No. CAL16-07861

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 922

September Term, 2017

_____


KRISTI HEFFINGTON, ET AL.

v.

RONALD F. MOSER, ET AL.

_____

Eyler, Deborah S.,
Leahy,
Wilner, Alan M.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Eyler, Deborah S., J.
_____

Filed:  August 30, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

This appeal presents a question of first impression in Maryland: whether, and under what circumstances, a plaintiff in a civil case who also is a defendant in a related criminal prosecution is entitled to a stay of the civil case so as not to penalize her for invoking her Fifth Amendment privilege against self-incrimination. We shall hold that in deciding whether to grant a stay, the court must balance the plaintiff's Fifth Amendment right against self-incrimination and Article 19 right of access to the courts against the defendant's interest in a timely resolution of the claims against him. A stay should be granted to protect the plaintiff's constitutional rights unless it will cause undue prejudice to the civil defendant.

In the Circuit Court for Prince George's County, Kristi Heffington ("Kristi") and her husband, Matthew Heffington ("Matthew"), the appellants, brought a tort action against Kristi's former employer, Ronald F. Moser, D.D.S, P.A. ("the Practice"), Ronald F. Moser, D.D.S. ("Dr. Moser"), and Dr. Moser's wife, Anne M. Moser ("Anne"), the appellees ("the civil suit").[1] The Heffingtons' tort claims all were based on allegedly false statements the Mosers made to the police, to the Practice's insurer, and to others that Kristi had stolen money from the Practice and had engaged in identity fraud while employed there.

While the civil suit was pending, Kristi was indicted by a grand jury in the Circuit Court for Prince George's County, Case No. CT170240X, for one count of theft scheme and four counts of identity fraud ("the criminal case"). Originally, the trial in the

---

[1] We shall refer to the Mosers and the Practice collectively as "the Mosers," unless it is necessary to refer to them separately.

criminal case was scheduled to commence before the assigned trial date in the civil case. Later, upon the State's request, the criminal case trial date was postponed. The new trial date for the criminal case was after the trial date in the civil suit. The Heffingtons filed a motion to stay the civil suit pending disposition of the criminal case, arguing that to protect herself in the criminal case, Kristi would be invoking the Fifth Amendment in the civil suit and, therefore, would be unavailable to testify on her own behalf. After a hearing, the court denied the motion to stay.

As we shall explain in detail below, on the first day of trial in the civil suit, the Heffingtons moved for a mistrial, which was denied, and rested without putting on evidence. The circuit court granted judgment in favor of the Mosers and the Practice on all counts.

The Heffingtons noted this appeal, asking whether the circuit court abused its discretion by denying their motion to stay the civil suit. For the following reasons, we answer that question in the affirmative. We shall vacate the judgment of the circuit court and remand for further proceedings.

## FACTS AND PROCEEDINGS

Dr. Moser owns and operates the Practice, which is located in Bowie. At the relevant time, Anne was working there as a dental hygienist. Kristi was hired by the Practice in June 2008. In 2010 she became the office manager. In that capacity, she was responsible for depositing all cash and checks in the Practice's business account, balancing the daily transactions, and providing Dr. Moser a daily report on revenue.

On April 15, 2015, Dr. Moser fired Kristi for stealing money from the Practice. Specifically, Kristi was accused of using the Visa terminal at the Practice to charge and later refund charges on medical credit cards she obtained in her name and in the names of family members, without their knowledge or consent. The day he fired Kristi, Dr. Moser reported Kristi's thefts to the City of Bowie Police Department and to CNA, the Practice's liability insurer. Five days later, Kristi's cousin, Randall Tracey ("Randall"), reported to the Anne Arundel County Police Department that Kristi had stolen his son Randy's identity and used it to apply for a medical credit card. Randall also reported that in 2013 Kristi had stolen his identity and had used it to apply for a $10,000 medical loan.

On March 21, 2016, the Heffingtons filed the civil suit that gives rise to this appeal. They alleged that in December 2013 Anne had told Kristi, in confidence, that she was having an affair and that in January 2015 Kristi had told Dr. Moser about Anne's affair. They further alleged that Dr. Moser and Anne then "conspired to develop a scheme to disparage [Kristi's] reputation, and to cause injury to her financial, mental, psychological, emotional, and personal well-being, as well as interfere with her own standing as an employee in the dental community." In furtherance of that conspiracy, the Mosers falsely reported to the police that Kristi had stolen over $3,000 from the Practice; filed a false insurance claim asserting that Kristi had stolen over $100,000 from the Practice; filed a civil action in the District Court of Maryland for Anne Arundel County falsely alleging that Kristi had wrongfully refused to repay a $5,000 loan from Dr. Moser; and called Randall, who was Matthew's employer, and made false allegations about Kristi and false allegations that Matthew had participated in Kristi's alleged theft scheme.

-3-

Kristi stated claims against the Mosers, individually, and the Practice for defamation *per se* (Counts I & II); malicious use of process (Counts III & IV); and tortious interference with prospective business advantage (Counts V & VI). Matthew stated claims against the Mosers, individually, and the Practice for defamation *per se* (Counts IX & X) and tortious interference with prospective advantage (Counts VII and VIII). They both stated a claim against the Mosers and the Practice for civil conspiracy (Count XI). In each count, they sought compensatory and punitive damages in excess of $75,000.

On August 16, 2016, the court entered a scheduling order, setting the case in for a four-day trial from June 19–22, 2017.

The Mosers noted Kristi's deposition, and, on November 14, 2016, Kristi was deposed for seven hours.[2] She testified that three weeks before she was fired, Randall's ex-wife contacted her via Facebook messenger and asked her about an issue with Randy's credit report. That is how she learned that she was being accused of stealing Randy's identity. Then, in May 2015, she learned the police were investigating her for identity theft. In answers to questions, she spoke about obtaining medical credit cards in her own name and in the names of various family members; transactions using those credit cards, including refunds of charges she had made from the office Visa terminal; loans Dr. Moser extended to her; and dental insurance claims she had made on behalf of her aunt, who never was a patient of the Practice. She denied any wrongdoing, claiming

---

[2] Kristi's deposition was videotaped.

that the financial transactions were proper and were made with the consent of her family members and with Dr. Moser's knowledge and consent. Kristi did not invoke her Fifth Amendment privilege against self-incrimination during the deposition.

On February 21, 2017, Kristi was indicted on one count of theft scheme over $10,000, but less than $100,000, and four counts of identity fraud—two pertaining to Randall and two pertaining to her brother's girlfriend. The offense dates all are April 15, 2015, and the crimes are based on misconduct by Kristi in her capacity as the office manager for the Practice. The trial in the criminal case was scheduled to commence on June 8, 2017, roughly two weeks before the trial date in the civil suit.

Meanwhile, discovery continued in the civil suit. On May 2, 2017, the parties attended mediation, which was unsuccessful. According to the Heffingtons, at the mediation their attorney advised the Mosers' attorney that he might file a motion to stay the civil suit until the criminal case was resolved.

On June 7, 2017, at the State's request, the trial date in the criminal case was postponed until August 23, 2017.

Eight days later, the Heffingtons filed a motion to stay the civil suit pending the resolution of the criminal case. They asserted that "[a]ny testimony provided by . . . Kristi . . . in the [civil suit] will implicate her Fifth Amendment right against self-incrimination and she will be unable to testify and present her case." They pointed out that because there is a one-year statute of limitations for defamation, *see* Md. Code (1974, 2013 Repl. Vol.), section 5-105 of the Courts and Judicial Proceedings Article ("CJP"), they had had no choice but to file suit in 2016. They analogized their

-5-

circumstances to two cases in which a stay of a civil action, or of particular proceedings in a civil action, was sought by a defendant pending resolution of related criminal charges against him. *In re Mid-Atlantic Toyota Antitrust Litigation*, 92 F.R.D. 358 (D. Md. 1981); and *In re Royal Ahold N.V. Securities & ERISA Litigation*, 220 F.R.D. 246 (D. Md. 2004). Referencing those cases, the Heffingtons argued that a stay would not burden them or the Mosers and would be convenient for the court because, if Kristi were to be convicted in the criminal case, the civil suit "will probably be dismissed."

The Mosers filed an opposition to the motion to stay. They argued that the motion was untimely, having been filed just six days prior to trial, and that, in any event, Kristi had waived her Fifth Amendment privilege against self-incrimination by testifying in deposition and engaging in discovery after she was indicted. They further argued that the Fifth Amendment is a shield and may not be used by a civil plaintiff as a sword to delay the resolution of her action pending the resolution of a related criminal action. They maintained that Kristi had been free not to file suit, could dismiss her suit, could attempt to prove her case through other evidence, or could take the stand and invoke the privilege. They argued that they had "an important interest in having their case tried expeditiously[,]" and would be prejudiced by a stay that lasted until the conclusion of the criminal case, whenever that might be.

On June 15, 2017, the court held a hearing on the motion to stay. The Heffingtons' lawyer requested a "short stay just to let the criminal trial get out of the way," explaining that if the stay were not granted, Kristi "would invoke her Fifth [Amendment privilege and the Heffingtons would] have no case" to put on. Counsel for

-6-

the Mosers and the Practice responded that, given the likelihood of additional continuances in the criminal case and an appeal if Kristi were to be convicted, any stay would not be "short" and that they had incurred significant costs preparing for trial and should not be forced to delay defending themselves against the civil suit.

At the conclusion of argument, the court denied the motion to stay, opining:

> I think there is a good likelihood that more likely so than not that there may be a finding that [Kristi] . . . may have waived her Fifth Amendment privilege to a certain extent. I haven't looked at the depositions. I don't know what the testimony is, but there's no dispute that she did give a deposition in this matter regarding the issue – surrounding the issues in this case, and that to a certain extent, from what I hear from counsel, the allegations in this case relate somewhat to the allegations in the criminal case.
>
> There is no guarantee when the criminal case is going to go forward when scheduled. I think the criminal case was scheduled previously in this matter and got continued. I have the criminal case here. It doesn't look like this criminal case is specially assigned to any judge, so there is extensive discovery, extensive documents in this case that may make this case go beyond the usual two- or three-day trial. That may continue it.
>
> I just say all this to say you don't have a guarantee that the [criminal] case is going to go forward on the date that it is currently assigned. This is a civil case and it could be continued. The civil case could be bumped further and further and further along. I do find that the motion is filed somewhat late since you knew that she was indicted months ago.
>
> For those reasons and the extensive discovery and preparation on the part of the defendant[s], just to note you were just in pretrial where defense counsel noted that as far as the documents they have in this case for exhibits, it's over a hundred documents in this matter. The civil case was specially assigned to this member of the bench. For those reasons, because there's no guarantee that the criminal case will go forward when . . . it's supposed to happen, I'm going to deny the motion to stay in this case.
>
> If [Kristi] does invoke her Fifth Amendment right in the civil case, a jury is able to take that evidence and draw reasonable inferences from that evidence. Those are things that she has to consider and I'm going to deny the motion to stay.

On June 19, 2017, the first day of trial, judgment was entered in favor of the Mosers. This timely appeal followed.

## DISCUSSION

Under the Fifth Amendment to the United States Constitution, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The Fifth Amendment applies to the States through the Fourteenth Amendment. *See Malloy v. Hogan,* 378 U.S. 1, 6 (1964).

"In order to invoke successfully the protection of the Fifth Amendment, an individual's statement must be compelled, testimonial, and self-incriminating." *In re Ariel G.*, 383 Md. 240, 244 (2004) (citing *Fisher v. United States*, 425 U.S. 391, 408 (1976)). It is well-established that the privilege against self-incrimination extends to witnesses in civil litigation: "[I]n a civil case the [F]ifth [A]mendment . . . protects a witness from being required to make disclosure, otherwise compellable in the trial court's contempt power, which could incriminate him [or her] in a later criminal prosecution." *Whitaker v. Prince George's County*, 307 Md. 368, 385 (1986) (citing 8 John H. Wigmore, *Wigmore on Evidence* § 2254 at 331 (McNaughton rev. ed. 1961)). *See also Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings"). In a criminal prosecution, a party's invocation of the privilege may not be used against her. However, "the prevailing rule

[is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify . . . ." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (citing Wigmore § 2272, at 439); *see also Long v. Long*, 141 Md. App. 341, 349 (2001).

In this appeal, the Heffingtons contend the circuit court abused its discretion by denying their motion to stay because it did not properly weigh Kristi's constitutional privilege against self-incrimination against the Mosers' interest in an expeditious trial of the claims against them.

The Mosers' response is three-pronged. First, this issue is not preserved for review because the Heffingtons acquiesced in the court's granting the motion for judgment against them. Second, if the issue is preserved, it lacks merit because Kristi waived her Fifth Amendment privilege by not actually taking the stand and invoking it at trial and by not invoking it at her deposition. And third, if the issue is preserved and the privilege was not waived, the court did not abuse its discretion by denying the motion to stay given that it was filed on the eve of trial and the criminal case could last for years.

**a.**

We begin with the threshold matter of preservation.

Trial commenced four days after the motion to stay was denied. At the outset, the Heffingtons' lawyer proposed a process to follow to "protect [his] client's interests[,]" *i.e.,* Kristi's Fifth Amendment right not to incriminate herself. A jury would be seated, opening statements would be waived, and he would proffer that Kristi was invoking her Fifth Amendment right and that without her testimony the Heffingtons could not put on evidence to prove their case. He then would move for a mistrial, rest the plaintiffs' case,

-9-

and the defense would move for judgment. Counsel for the parties agreed to shorten the process even more by waiving *voir dire* and simply seating the first six jurors from the venire panel. They further agreed that when the venire was brought into the courtroom the trial judge would inform them that they would not be hearing any evidence and that for "procedural reason[s]" the plaintiffs would rest, the defendants would make motions, the court would rule, and it would be a "very short day."

The process proposed was followed by counsel for the Heffingtons, counsel for the Mosers, and the court.

As noted, the Mosers maintain that the Heffingtons failed to preserve their Fifth Amendment issue for review because they acquiesced in the court's granting the motion for judgment. Specifically, they argue that the Heffingtons should have presented evidence other than Kristi's testimony to prove their case and did not adequately explain why they could not do so. The Mosers assert that this case is similar to *Osztreicher v. Juanteguy*, 338 Md. 528, 535 (1995), in which the Court of Appeals held that when, after a trial court precluded a medical malpractice plaintiff from calling his preferred expert, the plaintiff elected not to go forward with evidence, resulting in a judgment against him, he had "acquiesced in, if not consented to, the entry of that judgment."

The Mosers did not object to the process suggested by counsel for the Heffingtons; on the contrary, they participated in it. They expected that the Heffingtons would not be presenting any evidence and did not take the position that they should be required to or, as they now assert, that there was evidence other than Kristi's testimony that could serve as a sufficient substitute. Because they did not object, the issue was neither raised nor

-10-

decided below and therefore was not preserved. Md. Rule 8-131(a). To the extent there was acquiescence, it was by the Mosers in the process the Heffingtons' lawyer proposed be followed, not by the Heffingtons in the judgment.

This case is unlike *Osztreicher v. Juanteguy*. There, on the first day of trial, one of the plaintiff's expert witnesses refused to testify because he did not want to reveal how much money he had earned from giving expert witness testimony. The plaintiff had identified another expert, however, and that expert was available to testify. The plaintiff's counsel did not want to call the available expert because he was retired, and counsel thought the jury would give less weight to his testimony for that reason. He elected not to put on any evidence, which resulted in an adverse judgment, to which the Court of Appeals held the plaintiff had acquiesced. In that situation, counsel for the plaintiff made a strategic decision not to present evidence that could have been presented; opposing counsel did not agree to that process; and no party's Fifth Amendment right was at stake. None of those circumstances apply here.

**b.**

**(1)**

The Mosers maintain the Heffingtons waived their Fifth Amendment issue because Kristi did not actually take the stand and invoke the privilege. This waiver argument is not preserved for the same reason the acquiescence argument is not preserved. At no time did the Mosers object to Kristi's invoking the Fifth Amendment without taking the stand or assert, as they do now, that Kristi had to invoke the privilege on the stand and allow the jurors to draw a negative inference from that. *See Baxter*, 425

U.S. at 318; *Kramer v. Levitt*, 79 Md. App. 575, 587 (1989) (discussing permissible adverse inferences in civil cases based upon a party's invocation of the Fifth Amendment privilege). Again, the Mosers participated without objection in the process suggested by counsel for the Heffingtons, which called for no evidence to be taken—including the invocation of a privilege that could give rise to an adverse inference—and short circuited the jury selection process for that reason.[3]

**(2)**

We now turn to the thornier issue of whether Kristi waived her Fifth Amendment privilege by testifying in deposition before she was indicted.

The Fifth Amendment privilege "applies not only at trial, but at the discovery stage as well." *Id.* at 582*; see also* Md. Rule 2-402 ("A party may obtain discovery regarding *any matter that is not privileged*, . . . , if the matter sought is relevant to the subject matter involved in the action . . . .") (emphasis added). "[T]he right to assert one's privilege against self-incrimination does not depend upon the likelihood, but upon the possibility of prosecution." *In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir. 1974). The privilege may be invoked "'where the information sought to be extracted presents "a realistic threat of incrimination."'" *United States v. U.S. Currency*, 626 F.2d 11, 14 (6th Cir. 1980) (quoting *United States v. Powe*, 591 F.2d 833, 845 n.36 (D.C. Cir.

---

[3] We note that it is plain that if Kristi had taken the stand and invoked the Fifth Amendment in response to all questions, the Heffingtons could not have survived a motion for judgment. Thus, counsel for the Heffingtons reasonably avoided wasting the parties' and the court's time by informing the court that Kristi was invoking her privilege and by resting without putting on any evidence.

1978). In *Choi v. State*, 316 Md. 529, 536 (1989), the Court adopted the following standard from *Hoffman v. United States*, 341 U.S. 479, 486–87 (1951): "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Moreover, "[t]he privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute . . . ." *Hoffman*, 341 U.S. at 486.

Thus, in the case at bar, even though Kristi's deposition was taken before charges were filed against her, she could have invoked the privilege in response to questions posed by counsel for the Mosers; her answers could incriminate her in a potential future prosecution for theft or identity theft. The Mosers urge that by testifying "at great length in her extensive deposition . . . answer[ing] a multitude of wide-ranging questions" without invoking the privilege, Kristi must be held to have waived the privilege with regard to the subject matter covered. They rely primarily on *Brown v. United States*, 356 U.S. 148 (1958), to advance this argument.

In *Brown*, the government sought to denaturalize Stefana Brown, alleging that she was a member of the Communist Party when she was naturalized and therefore falsely swore allegiance to the United States Constitution in her naturalization proceeding. At trial, the government called Brown as an adverse witness. She admitted that she had once been a member of the Young Communist League but denied that she had belonged to the Communist Party before she was naturalized. When questioned about whether she

-13-

became a member of the Communist Party after she was naturalized, she invoked her Fifth Amendment privilege against self-incrimination.

Brown's attorney declined to cross-examine her, choosing instead to call her as a witness in the defense case.  On direct, Brown reaffirmed the truth of the statements she had made at the time of her naturalization, elaborating that she had "never taught or advocated the overthrow of the existing government or belonged to any organization that did so advocate . . . ."  *Id*. at 150.  On cross-examination, the government asked Brown: "Are you now or have you ever been a member of the Communist Party of the United States?"  *Id*. at 152.  Brown refused to answer, invoking her Fifth Amendment privilege. The district court ordered her to answer, ruling that "by taking the stand in her own defense [Brown] had abandoned the privilege . . . ."  *Id*.  Upon her continued refusal to answer, the court held Brown in contempt and sentenced her to imprisonment for six months.

Brown's appeal from the contempt judgment reached the Supreme Court, which affirmed.  It stated that "[a] witness who is compelled to testify . . . has no occasion to invoke the privilege against self-incrimination until the testimony sought to be elicited will in fact tend to incriminate."  *Id*. at 155. "On the other hand, when a witness *voluntarily testifies*, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process."  *Id*. (emphasis added).  This is so, the Court reasoned, because the witness has a "choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at

all." *Id.* Thus, a witness who testifies voluntarily waives the right to invoke the Fifth Amendment privilege against self-incrimination on matters within the scope of cross-examination.

The Mosers argue that, like the defendant in *Brown*, Kristi voluntarily testified at a wide-ranging deposition and has, by her conduct, waived her Fifth Amendment privilege as to the subject matter of her testimony. We disagree.

"Waiver is conduct from which it may be inferred reasonably an express or implied 'intentional relinquishment' of a known right." *Exxon Mobil Corp. v. Ford*, 433 Md. 426, 462 (2013). To be sure, the Fifth Amendment privilege is "not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion." *Maness v. Myers*, 419 U.S. 449, 466 (1975). Nevertheless, "courts . . . indulge every reasonable presumption against finding a testimonial waiver [of the Fifth Amendment privilege.]" *Klein v. Harris*, 667 F.2d 274, 287 (2d. Cir. 1981) (citing *Emspak v. United States*, 349 U.S. 190, 198 (1955)).

"Prior disclosures should not be held to constitute a waiver of privilege against self-incrimination in subsequent proceedings when *the reason for the apprehension* did not exist at the time the first testimony was given." *Kirane v. City of Lowell*, 622 F.Supp. 262, 264 (D. Mass 1985) (emphasis added). This concept underlies the majority rule in federal jurisprudence, which recognizes that the Fifth Amendment privilege is "proceeding specific," *i.e.*, that the privilege is "not waived in a subsequent proceeding by waiver in an earlier one[.]" *In re Morganroth*, 718 F.2d 161, 165 (6th Cir. 1983); *see also United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979); *United States v. Cain*,

-15-

544 F.2d 1113, 1117 (1st Cir. 1976) ("It is hornbook law that the waiver is limited to the particular proceeding in which the witness appears."); *United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) ("[I]t is well established that a waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding."); *In re Neff*, 206 F.2d 149, 152 (3rd Cir. 1953) ("It is settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding."); *accord United States v. Lawrenson*, 315 F.2d 612, 613 (4th Cir. 1963). The justification for the majority rule was aptly summarized by the Sixth Circuit: "during the period between the successive proceedings conditions might have changed creating new grounds for apprehension . . . ." *In re Morganroth*, 718 F.2d at 165.

In *Brown*, the defendant did not invoke the privilege when she testified, voluntarily, on direct examination in her defense case, and therefore she was held to have waived the privilege for purposes of cross-examination. In the case at bar, we need not address whether a pre-trial deposition and a trial in the same case are different "proceedings" for purposes of Fifth Amendment waiver because, even if they are not, here, unlike in *Brown*, a significant change in circumstance took place after Kristi's testimony in deposition and before trial. Although, when she filed suit, Kristi knew that criminal charges might be brought against her, she reasonably could have believed by November 2016 that that might not happen, given the passage of time. When she was indicted in February 2017, the Fifth Amendment calculus changed dramatically. She no longer faced only a possibility of being charged with crimes arising from her employment

at the Practice, but the absolute certainty of it. "[T]he potential for self-incrimination is greatest" after an indictment is returned. *Walsh Sec. Inc. v. Cristo Prop. Mgmt, Ltd.*, 7 F.Supp. 2d 523, 527 (D. N.J. 1998) (citation omitted). And, even if Kristi's trial testimony merely repeated her deposition testimony, "reiteration adds to the credibility of the statement." *Miranti*, 253 F.2d at 140.

Because Kristi's indictment created "new grounds for apprehension," *In re Morganroth*, 718 F.2d at 165, one cannot reasonably infer from her pre-indictment deposition testimony a waiver of her Fifth Amendment privilege post-indictment. Nor would such an inference comport with the dictate of the Court of Appeals, quoting *Hoffman v. United States*, 341 U.S. at 486, that the privilege against self-incrimination "must be accorded a liberal construction in favor of the right that it was intended to secure." *Adkins v. State*, 316 Md. 1, 8 (1989).

Furthermore, had Kristi invoked her Fifth Amendment privilege at her deposition, refusing to answer questions about her management of the Practice, the Mosers undoubtedly would have filed a motion to compel and, ultimately, for sanctions. At that time, in the absence of criminal charges, it is highly unlikely the circuit court would have been willing to entertain a stay of discovery. *See Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (the case for a stay of a civil proceeding is "far weaker" where the party seeking the stay based upon the Fifth Amendment privilege is not under a criminal indictment); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989) (accord). And Kristi's refusal to comply

with an order compelling her deposition testimony most likely would have resulted in the sanction of dismissal with prejudice.[4]

In light of the uncertainty regarding potential criminal charges at the time of Kristi's deposition and the change in circumstances brought about by her indictment, we hold that Kristi did not waive her Fifth Amendment privilege, for purposes of trial, by testifying before trial at her pre-indictment deposition.[5]

**c.**

The Fifth Amendment guarantees "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and *to suffer no penalty . . . for such silence*." *Malloy*, 378 U.S. at 8 (emphasis added). In this context, a "penalty" is "not restricted to fine or imprisonment[, but includes] the imposition of any sanction which makes assertion of the Fifth Amendment privilege '*costly.*'" *Spevack v. Klein*, 385 U.S. 511, 515 (1967) (quoting *Griffin v. State of California*, 380 U.S. 609, 614 (1965)) (emphasis added). With this in mind, we turn to the question whether the circuit court

---

[4] It is worth noting that at least one federal court has voiced concern that parties to a civil proceeding may invoke the privilege against self-incrimination at a deposition and later waive the privilege at the trial, disadvantaging their adversaries and exploiting the Fifth Amendment as a litigation strategy. *See S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3rd Cir. 1994). In the case at bar, the Mosers have not been disadvantaged in this way. They received the benefit of Kristi's full deposition testimony and completed discovery.

[5] The Mosers also state that Kristi waived her Fifth Amendment privilege by engaging in discovery after she was indicted. They make no argument to support that assertion and do not point to any discovery propounded by or responded to by Kristi that constituted a waiver.

abused its discretion by denying Kristi's motion to stay the civil suit pending resolution of the related criminal case.

"[C]ourts have inherent power to stay proceedings when the resolution of those proceedings could be impacted by other pending proceedings." *Bechamps v. 1190 Augustine Herman, LC*, 202 Md. App. 455, 460 (2011). "'The granting or refusing of a stay rests in the discretion of the court, the exercise of which will not be interfered with unless clearly abused.'" *Dodson v. Temple Hill Baptist Church, Inc.*, 254 Md. 541, 546 (1969) (quoting 1 *C.J.S. Actions* § 132 at 1405 (1936)). "[W]here the record so reveals, a failure to consider the proper legal standard in reaching a decision constitutes an abuse of discretion." *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 433 (2007). *See also Brockington v. Grimstead*, 176 Md. App. 327, 359 (2007) ("[A]n exercise of discretion based upon an error of law is an abuse of discretion.") (citing *Alston v. Alston*, 331 Md. 496, 505 (1993)).

"While a [trial] court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution." *Molinara*, 889 F.2d at 902 (citing *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir. 1980)); *see also Int'l Bus. Mach. Corp. v. Brown*, 857 F. Supp. 1384, 1387 (C.D. Cal. 1994) ("[I]t is well established that parallel civil and criminal proceedings can be brought and pursued against the same defendant 'simultaneously or successively.'") (citations omitted). However, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action

involving the same matter." *Dresser*, 628 F.2d at 1375–76. This is so, in large part, because permitting the civil proceeding to continue "might undermine the party's Fifth Amendment privilege against self-incrimination." *Id.* at 1376.

Not surprisingly then, when there are parallel civil and criminal cases, more often than not the party seeking a stay is a defendant in the civil case, and that is the procedural posture seen most frequently on appeal. Nevertheless, several courts have addressed the procedural scenario present here: a plaintiff who seeks to stay a civil suit she initiated pending the resolution of a related criminal case against her. Some of the early cases, such as *Independent Productions Corp. v. Loew's, Inc.*, 22 F.R.D. 266 (S.D.N.Y. 1958)— quoted by the Mosers—took a hardline approach:

> Plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action, they would not have been called on to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this asserted privilege as both a sword and a shield. Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege.

*Id.* at 277. *See also Lyons v. Johnson*, 415 F.2d 540, 541 (9th Cir. 1969) (explaining that plaintiff's civil rights claims were properly dismissed due to her "continued and unyielding refusal" to submit to discovery); *Fleming v. Bernardi*, 1 F.R.D. 624, 626 (N.D. Ohio 1941) (stating that a plaintiff seeking relief in court "must either give up his privilege to withhold pertinent evidence or he must abandon his suit for relief").

The trend in the law has moved away from that approach. "Under the more recent approach, . . ., the majority of jurisdictions have adopted a test which balances the competing rights of a plaintiff to exercise his privilege against self-incrimination and of a

-20-

defendant to adequately defend the claim brought against him." *Steiner v. Minnesota Life Ins. Co.*, 85 P.3d 135, 140 (Colo. 2004) (*en banc*). *See also McMullen v. Bay Ship Mgmt*, 335 F.3d 215, 218 (3rd Cir. 2003) ("Some commentators have suggested that having selected the litigation process, a plaintiff may not use the privilege to advance his cause—to use it as a sword, rather than a shield. That approach, however, has not carried the day.").

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979), is the signal case in the modern trend. The Wehlings, owners of trade schools in Texas, sued CBS for defamation for airing a story accusing Mr. Wehling of defrauding his students and the federal government. By then, Mr. Wehling had been subpoenaed to appear before a federal grand jury "investigating federally insured student loan programs." *Id*. at 1086. During each grand jury appearance, he invoked his Fifth Amendment privilege. In his defamation case, Mr. Wehling appeared for deposition and invoked his Fifth Amendment privilege "as to all questions with respect to his operation of the schools." *Id*. His attorney advised counsel for CBS that the "grand jury investigation was continuing" and that Mr. Wehling was believed to be "a target." *Id.* Thereafter, the district court ordered him to "answer the questions posed to him at his deposition or suffer dismissal of his lawsuit . . . ." *Id*. Mr. Wehling moved for a stay of discovery "until all threat of criminal liability had terminated[,]" *id*. at 1086 n.3, but the court denied the motion and again ordered him to "submit to discovery." *Id.* at 1086. For his continued refusal, the district court dismissed the defamation case with prejudice.

The Court of Appeals for the Fifth Circuit reversed. The issue before it was "not whether [Mr.] Wehling had a right to invoke the constitutional privilege against self-incrimination, which he did, but what effect the assertion of this privilege would have on his libel action against CBS." *Id*. at 1087. The court recognized that it would be unfair and unreasonable to permit Mr. Wehling to "proceed with his lawsuit and, at the same time, deprive CBS of information needed to prepare its truth defense[,]" but noted that Mr. Wehling had taken a middle road, asking "only that discovery be stayed" pending resolution of the criminal investigation. *Id*. Thus, the issue boiled down to whether the district court could require Mr. Wehling to "forgo a valid cause of action in order to exercise his constitutional right to avoid self-incrimination." *Id*.

The Court held that dismissal as a discovery sanction for the valid exercise of the Fifth Amendment privilege was "constitutionally impermissible," as it infringed upon Mr. Wehling's "due process right to a judicial determination of his civil action" by "forc[ing] [him] to choose between his silence and his lawsuit." *Id*. at 1087–88. The dismissal sanction was an unlawful "penalty" against Mr. Wehling for exercising a fundamental constitutional privilege. *Id*. at 1088 (citing *Spevack*, 385 U.S. at 515). To be sure, CBS also had "important rights that must be respected." *Id*. at 1088. Consequently, Mr. Wehling did not have an "absolute right to both his silence and his lawsuit." *Id*. The district court was required to balance the competing interests, however, with dismissal only being appropriate when "other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." *Id*.

The Fifth Circuit rejected the argument that a *defendant* who has been sued can raise the Fifth Amendment to protect against self-incrimination in a parallel criminal case but a *plaintiff* who has brought suit cannot. The "plaintiff-defendant distinction" rests on the theory that the plaintiff is a "voluntary litigant," but "[i]n most cases, however, a party 'voluntarily' becomes a plaintiff only because there is no other means of protecting legal rights." *Id.* at 1089 n.10.

Because the district court gave no weight to Mr. Wehling's constitutional interests, reversal was required. The Fifth Circuit did not remand the case to the district court to engage in the proper balancing, however. Instead, it held that a proper balancing of rights "tip[ped] in favor of [Mr.] Wehling," as a matter of law. *Id.* at 1088. Mr. Wehling had filed his civil suit on the final day before the one-year statute of limitations ran; sold his interest in the trade schools before then; and only was subject to potential criminal liability for another three years under the applicable statute of limitations. Thus, his request for a stay was not indefinite, but for a fixed period of time. Although a delay for potentially three years was inconvenient to CBS, that burden was reasonable given the important constitutional interests at stake. The court emphasized that if, during the stay, CBS's defense, which was based on truth, became prejudiced the district court was not precluded from imposing the sanction of dismissal at that time.

More recently, in *Armstrong v. Tanaka*, 228 P.3d 79 (Alaska 2010), the Supreme Court of Alaska was faced with a similar situation. Jared Armstrong gave a 14-year old boy a book containing some explicit material. The boy's father, James Tanaka, reported Armstrong to the Anchorage Police Department. The police obtained a search warrant

for Armstrong's home and subsequently arrested him. Although he initially was charged by the Municipality of Anchorage with dissemination of indecent materials to a minor, those charges were dismissed.

Thereafter, Armstrong sued Tanaka for defamation. During his deposition, Armstrong invoked his Fifth Amendment privilege in response to numerous questions. Tanaka filed a motion to compel. Three months later, the State of Alaska charged Armstrong with possession and distribution of child pornography. The following month, the court in the civil case granted Tanaka's motion to compel, ordering Armstrong to answer questions "that appear to overlap with his criminal case" at a continued deposition scheduled a month later. *Id.* at 81.

Armstrong moved for reconsideration and advised Tanaka's counsel that he would not appear for the continued deposition. After the motion for reconsideration was denied, Armstrong moved to stay the civil case pending resolution of the criminal case. The court denied the motion and ordered Armstrong to appear at a rescheduled continued deposition. On the advice of counsel, Armstrong declined to appear at the rescheduled deposition. As a consequence, the court dismissed his case with prejudice.

On appeal, the Supreme Court of Alaska reversed. It described the issue of first impression before it as: "[W]hether a *plaintiff* in a civil lawsuit who is simultaneously defending himself in a related criminal case and who seeks a stay of civil proceedings to protect his right against self-incrimination is entitled to the requested stay of civil proceedings." *Id.* at 83 (emphasis in original). The court emphasized that not only was Armstrong's Fifth Amendment right to remain silent and "'to suffer no penalty for such

silence'" implicated, his "general right of access to the courts" under the due process clause of the Alaska Constitution, which protects the right to bring a personal injury claim, such as a defamation action, was implicated. *Id*. at 82–83 (quoting *Spevack*, 385 U.S. at 514). After discussing *Wehling*, the court opined:

> [W]here an individual threatened by criminal charges brings a civil action, and either party to the civil action requests a stay of civil proceedings pending resolution of the related criminal proceedings, a trial court must balance the parties' interests to determine whether a stay is appropriate.

*Id*. at 85. That means, "[a]t a minimum, . . . balancing the plaintiff's right to assert [the] Fifth Amendment privilege without penalty and his right of access to the courts against the defendant's right to defend himself against the plaintiff's allegations and interest in timely resolution of the proceedings against him." *Id*. Because the trial court had not balanced these interests before denying Armstrong's motion to stay, the court vacated the order dismissing the action and remanded for the trial court to "articulate its reasons for granting or denying Armstrong's motion to stay." *Id*. In particular, if the court were to deny the stay, it was to articulate how a stay would "prejudice Tanaka's defense." *Id*. at 86.

In *Ex Parte Baugh*, 530 So.2d 238 (Ala. 1988), an older but similar case, the Supreme Court of Alabama reversed a contempt order against a plaintiff for, upon advice of counsel, refusing to appear for her deposition. After Baugh sued the defendants for slander, she learned she was the target of a related grand jury investigation. She then refused to attend a scheduled deposition for fear of self-incrimination. The defendants moved for sanctions and for an order compelling Baugh to appear at a rescheduled

deposition. She opposed the motions and moved for an order staying discovery until the conclusion of the related criminal case. The court denied Baugh's motion and ordered her to attend the deposition. She complied but invoked her Fifth Amendment privilege in response to numerous questions. Thereafter, the court held her in contempt and sentenced her to five days' incarceration, suspending the sentence to give her a chance to purge her contempt by appearing for a rescheduled deposition. Meanwhile, Baugh was indicted for theft. Prior to the rescheduled deposition, she appealed the order of contempt.

The Alabama Supreme Court reversed. Relying upon *Wehling* and another federal decision, *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198 (Fed. Cir. 1987),[6] it held that before a trial court can sanction a plaintiff for invoking her Fifth Amendment privilege the court must balance the parties' competing interests. The court applied the balancing test to the undisputed facts and concluded that it weighed in Baugh's favor. Reasoning that it would be unfair to stay only the discovery propounded to Baugh, it directed that the slander action be stayed in its entirety pending resolution of the criminal case against Baugh. The court emphasized that if, during the pendency of the stay, "crucial avenues of discovery" closed, the defendants could move for dismissal and the court would have discretion to grant that sanction. *Ex Parte Baugh*, 530 So.2d at 244–45.

---

[6] In *Afro-Lecon*, the United States Court of Appeals for the Federal Circuit, in reliance on *Wehling*, reversed an order of the General Services Administration Board of Contract denying a motion to stay a claim before the Board pending resolution of a grand jury investigation into whether the claimant was making a false claim and remanded for the board to apply a balancing test.

We return to the case at bar. Kristi has two constitutional rights that are implicated: her Fifth Amendment right against self-incrimination and her right of access to the courts under Article 19 of the Maryland Declaration of Rights.[7] Article 19, entitled "Remedy for injury to person or property," states:

> That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

It "generally protects two interrelated rights: (1) a right to a remedy for an injury to one's person or property; (2) a right of access to the courts." *Piselli v. 75th Street Medical*, 371 Md. 188, 205 (2002); *see also Johnson v. Md. State Police*, 331 Md. 285, 297 (1993) ("Article 19 does guarantee access to the courts."). "Where a person clearly has a right to money or property under a statute or common law principle, and no statute specifically provides for a remedy, Article 19 guarantees a common law remedy to enforce the right." *Piselli*, 371 Md. at 206. Article 19 has been held to "prohibit[] unreasonable restrictions upon traditional remedies or access to the courts." *Id.* at 206. *See also Jackson v. Dackman*, 422 Md. 357 (2011).

We adopt the modern trend and hold that in ruling on the Heffingtons' motion to stay, which, more specifically, was a request to stay the trial of the case where discovery already was completed, it was incumbent upon the circuit court to balance Kristi's Fifth Amendment right against self-incrimination and her Article 19 right to access to the

---

[7] Article 22 of the Maryland Declaration of Rights also protects against self-incrimination, stating simply: "That no man ought to be compelled to give evidence against himself in a criminal case."

courts against the Mosers' right to a timely resolution of the claims against them without harm to their defense. As the Third Circuit explained in *McMullen*, when a party is asserting a constitutional privilege, any detriment to that party from doing so must "'be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.'" 335 F.3d at 218 (quoting *SEC v. Graystone Nash, Inc.,* 25 F.3d 187, 192 (3d Cir. 1994)).

In considering and ultimately denying the Heffingtons' motion to stay, the circuit court did not balance the parties' competing interests. The court opined that Kristi likely had waived her Fifth Amendment privilege "to a certain extent" by her deposition testimony. In other words, it did not ascertain that she had a Fifth Amendment interest to balance. For the reasons already discussed, this was wrong, as Kristi did not waive her Fifth Amendment right against self-incrimination. The court further reasoned that potential delays in the criminal case against Kristi, coupled with the Mosers' having engaged in extensive discovery and trial preparation, militated against a stay. In so ruling, the court gave no consideration to Kristi's interests under Article 19. The court was obligated, "[a]t a minimum, . . . [to] balance[e] [Kristi's] right to assert [her] Fifth Amendment privilege without penalty and [her] right of access to the courts against the [Mosers'] right to defend . . . against [Kristi's] allegations and interest in timely resolution of the proceedings against [them]." *Armstrong*, 228 P.3d at 85. Nor did the court consider whether a stay would not merely inconvenience the Mosers but actually would prejudice them. By not applying the proper legal standard in ruling on the motion to stay, the court abused its discretion.

-28-

We shall not remand this matter to the circuit court to reconsider the motion to stay because a proper balancing of the competing interests in this case, when the stay was requested, necessarily would have weighed so heavily in favor of granting a stay that it would have been an abuse of discretion to rule otherwise. We explain.

As noted, the Heffingtons had a right under Article 19 to access the courts to seek a remedy for the injuries they claimed they had suffered by virtue of the Mosers' alleged wrongs. They filed suit in March 2016 because their cause of action for defamation—clearly their primary claim—carried a one-year statute of limitations under CJP §5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."). They could not delay filing suit beyond then without running a strong risk that their defamation claim would be barred by limitations.[8] The June 19, 2017 trial date was established by the court via scheduling order on August 16, 2016, and was the first and only trial date. Neither side requested a postponement of the trial date until the Heffingtons filed their motion to stay, by which time discovery was completed.

The predicate events for the Heffingtons' civil suit completely overlapped the predicate events for several of the crimes for which Kristi was indicted in February 2017. If the criminal case had gone to trial on June 7, 2017, as originally scheduled, in all likelihood the trial would have been completed before the civil suit went to trial, greatly mitigating Kristi's interest in avoiding self-incrimination. The State, not Kristi, sought

---

[8] Limitations is an affirmative defense that can be waived. There is no reason to think the Mosers would have waived it. Indeed, they raised it in their answer and amended answer.

the postponement of the criminal trial date that switched the order in which the cases would be tried, creating Kristi's Fifth Amendment dilemma. The Heffingtons filed their motion to stay eight days after that switch in trial dates, which is hardly dilatory.[9]

Without a stay in the trial of the civil suit until after the criminal case was resolved, Kristi would risk incriminating herself by testifying, and her testimony was crucial to her civil claims. Thus, she would be in the predicament of "choosing between [her] silence and her lawsuit." *Wehling*, 608 F.2d 1088; *see also Armstrong*, 228 P.3d at 85 (dismissal of Armstrong's defamation action infringed upon his Fifth Amendment privilege and his "general right of access to the courts"). The burden Kristi would (and ultimately did) suffer by denial of a stay was severe and costly. *See* Wright, Charles A., Miller, Arthur R., et al., 8 *Federal Practice & Procedure* § 2018 at 455 (3d ed. 2010) ("[T]o grant an adverse judgment . . . merely for claiming the constitutional privilege [against self-incrimination] certainly makes the resort to the privilege too 'costly.'").

Of course, the Mosers had an interest in defending the claims against them and having them resolved expeditiously. Yet, the civil suit was not by any measure a case that had been languishing in the courts for an unduly prolonged period of time. The complaint was filed on March 21, 2016; the defendants filed a motion to dismiss on May 17, 2016; the motion was denied on August 1, 2016; an August 11, 2016 scheduling order set the trial for June 19–22, 2017; the defendants filed answers on August 22, 2016; and

---

[9] In denying the motion to stay, the court remarked that the motion was not filed until months after the indictment. The need for a stay did not arise until after the criminal trial date was moved, however.

discovery ensued continuously thereafter. The case was specially assigned on May 11, 2017, after an unsuccessful ADR conference. There were no postponements of the trial date. By the time the motion to stay was considered, the case only had been pending for a year and three months. Although there also is a strong public interest in cases proceeding expeditiously, we find wisdom in the Third Circuit's admonition in *McMullen*: "The only virtue in dismissing the case here was clearing the court's docket. Although promptness in judicial administration is highly desirable, delay may sometimes be necessary to the mission of doing justice." 335 F.3d at 219.

Under the circumstances, the Heffingtons' interest in pursuing their civil suit to trial at a time when Kristi could testify without the risk of self-incrimination far outweighed any burden upon the Mosers from a delay in the trial date until the criminal case has been resolved.

As already mentioned, a plaintiff whose constitutional rights are jeopardized by further proceedings in her own case is entitled to a stay unless "other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." *Wehling*, 608 F.2d. at 1088. Here, any prejudice to the Mosers from a stay of the trial of the civil suit would be slight when compared to the prejudice to the Heffingtons. The Mosers were not at risk of having "crucial avenues of discovery" cut off during the stay because discovery was complete. *Ex Parte Baugh*, 530 So.2d at 245; *see also Wehling*, 608 F.2d at 1089 (noting the possibility that "avenues of discovery" might close during pendency of stay, justifying dismissal). We understand that the stay requested was open-ended in time, because the new August 23, 2017 criminal trial date could be postponed.

(In fact, it later was postponed.) The stay as requested would have protected Kristi in exercising her implicated constitutional rights without any serious adverse consequences to the Mosers, however.

For all of these reasons, we shall vacate the judgment in favor of the Mosers. We remand for the court to consider the Mosers' motion for summary judgment.[10] Ordinarily, we would direct that, unless that motion is granted in its entirety, the court enter an order staying the civil suit at least until the conclusion of the circuit court proceedings in the criminal case.[11] However, very recently, while this appeal was pending but after oral argument, the State and Kristi Heffington entered into a plea agreement that brought the criminal case to a close.[12] Accordingly, we simply shall remand for further proceedings not inconsistent with this opinion.[13]

---

[10] On May 26, 2017, before the stay was requested, the Mosers filed a motion for summary judgment. The motion remained open on the first day of trial. It was not ruled upon because the Mosers and the court agreed that it would be rendered moot by the grant of the Mosers' motion for judgment. Our decision in this appeal, vacating the judgment in the Mosers' favor, revives the motion for summary judgment. We express no opinion about the appropriate outcome of the motion.

[11] We would do so with the caveat that if, during the pendency of any stay, the Mosers could show that due to intervening events their ability to defend the civil suit had been prejudiced, the court would have discretion to lift the stay and dismiss the Heffingtons' claims.

[12] *Maryland Judiciary Case Search* shows that Kristi was indicted in two other criminal cases, in May 2018 (CT180614A), and June 2018 (CT180789A). Those charges included identity fraud, insurance fraud, theft, and forgery. Later in June, a plea hearing was held. In July, Kristi filed a motion to enforce plea agreement. The court held a hearing on that motion on July 13, 2018, and on July 18, 2018, entered an order granting the motion to enforce. The next day, a plea hearing was held and Kristi was sentenced.

(Continued…)

-32-

**JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEES.**

---

(…continued)

The plea agreement covered the indictment in the criminal case that was filed in February 2017 and the indictments filed in May and June 2018. Kristi pleaded guilty to count 3, identity fraud, in the February 2017 indictment, and was sentenced to 10 years, all but nine months on home detention suspended, with five years' probation and restitution of $25,000. She pleaded guilty to count one, making a false statement in an insurance claim, in the May 2018 indictment and was given a concurrent sentence of three years, all suspended, with the same probation. Finally, Kristi pleaded guilty to count 3, conspiracy to commit identity theft, in the June 2018 indictment. She was given a concurrent sentence of five years, all suspended, with the same probation and no restitution. All remaining counts in the three cases were *nol prossed*.

[13] As noted above, in arguing before the circuit court in favor of the requested stay, Kristi's counsel stated that a stay would be convenient for the court because, if Kristi were to be convicted in the criminal case, the civil suit "will probably be dismissed." We cannot determine from the information available on *Maryland Judiciary Case Search* whether the crimes Kristi pleaded guilty to are the crimes Dr. Moser accused her of committing. In any event, voluntary dismissal is also an option on remand.