*Ronald F. Moser, et al. v. Kristi Heffington*, *et al.*, No. 62, September Term 2018
Opinion by Raker, J. (Senior Judge, Specially Assigned)

**FIFTH AMENDMENT – WAIVER OF PRIVILEGE AGAINST SELF-INCRIMINATION –** For the purpose of the Fifth Amendment privilege against self-incrimination, a deposition and the trial for which it is given are part of the same "proceeding." Thus, when the plaintiff waived her Fifth Amendment privilege at a deposition, she waived the privilege to the same extent at her subsequent trial.

**CIVIL PROCEDURE – MOTION TO STAY –** When a plaintiff in a civil case moves to stay her civil case pending parallel criminal proceedings against her, the court must consider the relevant rights and interests of the parties and may consider the inconvenience to the court's docket. The Circuit Court for Prince George's County did not abuse its discretion when it concluded that the plaintiff had waived her Fifth Amendment privilege against self-incrimination, considered the defendants' right to timely resolution of claims against them, and denied the motion.

**CIVIL PROCEDURE – MOTION FOR JUDGMENT –** Where the plaintiffs consented to an abbreviated trial proceeding in which the plaintiffs presented no evidence, the Circuit Court for Prince George's County did not err in granting the defendant's motion for judgment pursuant to Maryland Rule 2-519.

Circuit Court for Prince George's County
Case No. CAL16-07681
Argued: April 8, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 62

September Term, 2018

_____

RONALD F. MOSER, *et al.*

v.

KRISTI HEFFINGTON, *et al.*

_____

Barbera, C.J.
*Greene,
McDonald,
Watts,
Hotten,
Getty,
Raker, Irma S.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Raker, J.

_____

Filed: August 16, 2019

Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

_____

At the heart of this case is whether a plaintiff in a civil lawsuit, a defamation action, who is also the defendant in a related criminal case, is entitled to a stay of the civil lawsuit she initiated pending resolution of the criminal case. Petitioners, Ronald F. Moser, Anne M. Moser, and Ronald F. Moser, D.D.S., P.A. ("the Mosers"), appeal from the Court of Special Appeals's reversal of a judgment in the Circuit Court for Prince George's County granting judgment at the end of plaintiff's case in favor of the Mosers. Before the Court of Special Appeals, respondents Kristi and Matthew Heffington ("the Heffingtons") argued that the circuit court abused its discretion by denying their motion to stay the civil proceeding because it did not weigh properly Mrs. Heffington's constitutional protection against self-incrimination against the Mosers' interest in an expeditious trial of the claims against them. The Court of Special Appeals agreed with the Heffingtons, holding that the trial court abused its discretion in not granting the stay, reversed, and remanded the matter for further proceedings. *Heffington v. Moser*, 238 Md. App. 509, 192 A.3d 900 (2018). We granted the Mosers' petition for a writ of certiorari to answer the following questions:

1. Did the trial court abuse its discretion in denying respondents' motion to stay the civil proceedings in this defamation action pending resolution of the criminal proceedings pending against petitioner?

2. Did employee waive her Fifth Amendment privilege in the civil action by testifying at her deposition and providing other discovery responses without invoking the privilege after she was on notice that the police were investigating her for embezzlement and identity theft?

3. Given that employee had already answered questions at her deposition concerning acts of embezzlement and identity theft, did employee fail to preserve for review the denial of a stay of the civil action where she failed to proffer the

questions as to which she intended to invoke her right to silence—which was necessary to determine if she could validly exercise the privilege or had waived it?

4. Did the Court of Special Appeals unnecessarily decide a constitutional question, *i.e.*, whether the trial court had failed to fully consider employee's Fifth Amendment right by not granting a stay of her civil action, after it learned that employee had been convicted of the very conduct that formed the basis for dentist's alleged defamation against her, which rendered moot her defamation claim?

We shall hold that the trial court did not abuse its discretion in denying the Heffingtons' motion to stay the civil proceedings, and we shall reverse the judgment of the Court of Special Appeals.

I.     Procedural History

On March 21, 2016, respondents Kristi and Matthew Heffington filed in the Circuit Court for Prince George's County an eleven-count Complaint against petitioners Ronald F. Moser, Anne M. Moser, and Ronald F. Moser, D.D.S., P.A.  The Complaint alleged defamation *per se*, malicious use of process, tortious interference with prospective business advantage, tortious interference with contractual relations, and civil conspiracy, all based upon the Mosers' allegedly false statements to the police, to the dental practice's insurer, and to others.  The essence of the statements was that Kristi Heffington stole money from the dental practice and committed identity fraud.

Following the circuit court's denial of the Moser defendants' motion to dismiss the Complaint, the parties engaged in discovery, including interrogatories and depositions. The circuit court set a trial date of June 19–22, 2017, and Mrs. Heffington was deposed on

2

November 14, 2016. On February 16, 2017, Mrs. Heffington was indicted by the Grand Jury for Prince George's County for the same events underlying the defamation action. She was charged with a theft scheme of $10,000 to under $100,000 and four counts of fraud by identity theft. Two further indictments—for related crimes in the same transactions—followed.

On June 13, 2017, the Heffingtons filed a motion to stay the civil action. They argued that Mrs. Heffington's testimony in the civil action would implicate her Fifth Amendment right against self-incrimination in her criminal case and that she therefore could not present her defamation action before she resolved her criminal case. The circuit court denied the motion, and the matter proceeded to trial before a jury. The Heffingtons waived opening statement and presented absolutely no evidence. They moved for a mistrial, citing the arguments from their motion to stay. The trial court denied the mistrial motion, and the Mosers reserved opening statements and then moved for judgment on all claims. The court granted judgment in favor of all defendants on all counts.

The Heffingtons filed an appeal in the Court of Special Appeals on July 5, 2017. On July 19, 2018, Mrs. Heffington pled guilty to identity fraud, making a false statement in an insurance claim, and conspiracy to commit identity theft, criminal offenses arising from the same facts in this civil action. The Court of Special Appeals vacated the judgment of the Circuit Court for Prince George's County, holding, *inter alia*, that the trial court abused its discretion in denying the Heffingtons' motion to stay the proceedings. *Id.*, 238 Md. App. at 541, 192 A.3d at 918. We granted the Mosers' Petition for Writ of Certiorari. *Moser v. Heffington,* 462 Md. 260, 199 A.3d 693 (2018).

3

## II. Factual Background

Mrs. Heffington was an employee of Ronald F. Moser, D.D.S., P.A., a family dental practice. She held the position of office manager. She was responsible for depositing all cash and checks in the practice's business account, balancing the daily transactions, and providing Dr. Moser with a daily report on revenue. In April 2015, Dr. Moser fired Mrs. Heffington for stealing money from the practice. The Mosers accused her of using the Visa terminal at the practice to process and later refund to herself charges on medical credit cards she obtained in her name and in the names of family members—without their knowledge or consent. Dr. Moser reported Mrs. Heffington's thefts to the City of Bowie Police Department and to the practice's insurer. Five days later, Mrs. Heffington's cousin, Randall Tracey, reported to the Anne Arundel County Police Department that Mrs. Heffington stole his identity and used it to apply for a $10,000 medical loan. He reported also that she stole his son's identity and used it to apply for a medical credit card.

Nearly one year later, in March 2016, the Heffingtons filed the eleven-count civil lawsuit underlying this appeal. The circuit court scheduled the case for a four-day trial, from June 19–22, 2017.

As part of the discovery process, Mrs. Heffington sat for a seven-hour deposition in November 2016. She did not invoke her Fifth Amendment privilege against self-incrimination and answered numerous inculpatory questions. She testified that three weeks before she was fired, Mr. Tracey's ex-wife asked her about an issue with Mr. Tracey's credit report. Mrs. Heffington said she learned from that conversation that she was accused of stealing Mr. Tracey's identity. Mrs. Heffington testified that she obtained medical credit

4

cards in her own name and in the names of various family members, made transactions using those cards, and used the practice's Visa terminal to refund the transactions. She also testified about loans Dr. Moser extended to her and dental insurance claims she made on behalf of her aunt, who was never a patient of the practice. She denied any wrongdoing, claiming that the transactions were proper and were made with the consent of her family members and Dr. Moser.

Following Mrs. Heffington's indictment, the Heffingtons and Mosers continued civil discovery. The Heffingtons deposed Dr. Moser in March 2017, and the parties attended an unsuccessful mediation in May.

On June 7, 2017, the court postponed the criminal trial at the State's request. On June 13 (six days before the civil trial), the Heffingtons filed a motion to stay the civil proceedings, requesting that the court stay the civil proceedings pending the outcome of the criminal case. At the motion hearing, the Heffingtons requested a "short stay just to let the criminal trial get out of the way," explaining that Mrs. Heffington's testimony in the civil action would implicate her Fifth Amendment privilege against self-incrimination and that without the stay, she would not be able to present her case. The Heffingtons noted that because the statute of limitations in a defamation action is one year, s*ee* Md. Code (1974, 2013 Repl. Vol.), § 5-105 of the Courts and Jud. Proc. Art., they had no choice but to file suit in 2016.

Opposing the stay, the Mosers argued that the motion was untimely (coming just days prior to trial) and that they had incurred significant costs preparing for trial and should not be forced to delay defending themselves against the civil suit. Significantly, they

_____

argued that Mrs. Heffington had waived her Fifth Amendment privilege by testifying

without raising her privilege in her deposition and engaging in discovery after she was

indicted. They maintained that Mrs. Heffington had been free not to file suit, could dismiss

her suit, could attempt to prove her case through other evidence, or could testify at the civil

trial but invoke her Fifth Amendment privilege on a question by question basis. They

asserted that, given the likelihood of additional continuances in the criminal case and an

appeal if a jury convicted Mrs. Heffington, any stay would not be "short."

The trial court denied the motion to stay, ruling as follows:

> "I think there is a good likelihood . . . that there may be a finding that [Mrs. Heffington] may have waived her Fifth Amendment privilege to a certain extent. I haven't looked at the depositions. I don't know what the testimony is, but there's no dispute that she did give a deposition in this matter regarding the issue—surrounding the issues in this case, and that to a certain extent, from what I hear from counsel, the allegations in this case relate somewhat to the allegations in the criminal case.
>
> There is no guarantee when the criminal case is going to go forward when scheduled. I think the criminal case was scheduled previously in this matter and got continued. I have the criminal case here. It doesn't look like this criminal case is specially assigned to any judge, so there is extensive discovery, extensive documents in this case that may make this case go beyond the usual two- or three-day trial. That may continue it.
>
> I just say all this to say you don't have a guarantee that the [criminal] case is going to go forward on the date that it is currently assigned. This is a civil case and it could be continued. The civil case could be bumped further and further and further along. I do find that the motion is filed somewhat late since you knew that she was indicted months ago.
>
> For those reasons and the extensive discovery and preparation on the part of the defendant, just to note you were just in pretrial where defense counsel noted that as far as the documents they have in this case for exhibits, it's over a

6

> hundred documents in this matter. The civil case was specially assigned to this member of the bench. For those reasons, because there's no guarantee that the criminal case will go forward when . . . it's supposed to happen, I'm going to deny the motion to stay in this case.
>
> If [Mrs. Heffington] does invoke her Fifth Amendment right in the civil case, a jury is able to take that evidence and draw reasonable inferences from that evidence. Those are things that she has to consider and I'm going to deny the motion to stay."

As indicated, the trial commenced, the circuit court granted judgment in favor of the Mosers, and the Heffingtons filed a timely notice of appeal.

### III. The Court of Special Appeals Opinion

The Court of Special Appeals held that the circuit court abused its discretion in denying the Heffingtons' motion to stay the civil case. *Heffington v. Moser*, 238 Md. App. at 509, 518 192 A.3d at 905. Specifically, the Court of Special Appeals concluded that Mrs. Heffington did not waive her Fifth Amendment privilege against self-incrimination when she gave inculpatory testimony during her deposition prior to the February 2017 indictment. *Heffington*, 238 Md. App. at 532, 192 A.3d at 913. The court held also that the circuit court erred when it failed to balance explicitly Mrs. Heffington's right to assert her Fifth Amendment privilege and her right of access to the courts under the Maryland Declaration of Rights against the Mosers' right to timely resolution of the claims against them without harm to their defense. *Id.* at 540, 192 A.3d at 917.

The Mosers argued in the Court of Special Appeals that Mrs. Heffington waived her Fifth Amendment privilege in two ways: first, she did not take the witness stand and invoke

7

the privilege, and second, she waived her Fifth Amendment privilege by testifying to the acts at issue in her deposition before she was indicted. *Id.* at 527, 192 A.3d at 910. The court held that as to the procedural default, *i.e.*, that she did not invoke her privilege properly, the Mosers did not object below, and hence, that argument was waived and not preserved for appellate review. *Id.* at 526, 192 A.3d at 909. As to the waiver of the privilege by testifying at the deposition, the court held Mrs. Heffington did not waive her Fifth Amendment privilege. The court held that "[i]n light of the uncertainty regarding potential criminal charges at the time of Kristi's deposition and the change in circumstances brought about by her indictment, we hold that Kristi did not waive her Fifth Amendment privilege, for purposes of trial, by testifying before trial at her pre-indictment deposition." *Id.* at 532, 192 A.3d at 913.

The Court of Special Appeals acknowledged that if waived, the privilege is waived for the entire "proceeding" in which it was waived. *Id.* at 529–30, 192 A.3d at 911. But the court avoided addressing whether a deposition and a trial in the same case are different "proceedings" for Fifth Amendment waiver purposes. The court held that even if they were part of the same proceeding, Mrs. Heffington's later criminal indictment was a significant change in her circumstance between her deposition testimony and her trial. *Id.* at 530–31, 192 A.3d at 912. The court reasoned as follows:

> "Although, when she filed suit, Kristi knew that criminal charges might be brought against her, she reasonably could have believed by November 2016 that that might not happen, given the passage of time. When she was indicted in February 2017, the Fifth Amendment calculus changed dramatically. She no longer faced only a possibility of being charged with crimes arising from her employment at the Practice, but the

8

absolute certainty of it. '[T]he potential for self-incrimination is greatest' after an indictment is returned. And, even if Kristi's trial testimony merely repeated her deposition testimony, 'reiteration adds to the credibility of the statement.'"

*Id.* (internal citations omitted).

The intermediate appellate court held that the trial court abused its discretion in denying Mrs. Heffington's motion because the court "did not balance her Fifth Amendment right against self-incrimination and her Article 19 right to access to the courts against the Mosers' right to a timely resolution of the claims against them without harm to their defense." *Id.* at 541, 192 A.3d at 918. The Court of Special Appeals elaborated that because the trial court held that Mrs. Heffington did not waive her Fifth Amendment privilege, the court erred by finding that she waived the privilege "to a certain extent" in her deposition testimony. *Id.* at 540, 192 A.3d at 918. Finally, the intermediate appellate court held that the trial court erred in not considering whether a stay would not merely inconvenience the Mosers but actually would prejudice them. *Id.* at 542–43, 192 A.3d at 919.

The Court of Special Appeals vacated the judgment of the circuit court in favor of the Mosers. The intermediate appellate court remanded for the trial court to consider the Mosers' motion for summary judgment[1] because, while the appeal was pending but after

---

[1] The Court of Special Appeals explained as follows:

"On May 26, 2017, before the stay was requested, the Mosers filed a motion for summary judgment. The motion remained open on the first day of trial. It was not ruled upon because the Mosers and the court agreed that it [(footnote continued . . .)]

9

oral argument in the Court of Special Appeals, Mrs. Heffington entered into a plea agreement with the State that concluded the criminal case.

We granted certiorari to consider the issues presented.

## IV. Arguments of the Parties

Before this Court, the Mosers ask that we vacate the judgment of the Court of Special Appeals and reinstate the judgment of the Circuit Court for Prince George's County. The Mosers argue first that the circuit court did not abuse its discretion in denying the motion to stay. They argue in the alternative that the Heffingtons' civil suit is moot because Mrs. Heffington pled guilty in the criminal case and that those convictions establish the defense of "truth" as a matter of law.

On the merits, they argue that whatever the balancing test, the circuit court balanced properly the competing interests at stake. They contend that the court considered the parties' interests in resolving the case, the uncertainty of the length of the stay, the Heffingtons' late filing of their motion after civil discovery, and the inference the jury could draw from invocation of the Fifth Amendment in a civil trial. They emphasize that the Heffingtons filed their motion to stay months after Mrs. Heffington's indictment and only six days before the civil trial. They argue that the Heffingtons' delay prejudiced them

would be rendered moot by the grant of the Mosers' motion for summary judgment. Our decision in this appeal, vacating the judgment in the Mosers' favor, revives the motion for summary judgment. We express no opinion about the appropriate outcome of the motion.

10

because the Heffingtons initiated and responded to discovery requests in the interim months, incurring litigation costs for the Mosers.

Turning to mootness, the Mosers argue that Mrs. Heffington's guilty plea in her criminal case mooted the Heffingtons' civil claim. Mrs. Heffington pled guilty to identity fraud, making a false statement in an insurance claim, and conspiracy to commit identity theft. At her plea hearing, Mrs. Heffington agreed that she used the personal information of Randall Tracey, Dr. Moser, and others to obtain for herself funds from a bank, an insurance company, and the dental practice. The Mosers argue that her guilty pleas and the underlying admissions of fact form an absolute defense against the Heffingtons' claim of defamation relating to the same issues, mooting the defamation claims against the Mosers.

In response to the holding of the Court of Special Appeals that they waived the right to challenge Mrs. Heffington's assertion of her Fifth Amendment privilege in the manner in which she did, the Mosers argue that they retain the right to challenge before this Court the improper procedure followed below in asserting the Fifth Amendment privilege. They contend that they did not agree to waive potential defenses and that they "cannot reasonably be penalized for a decision made by the Heffingtons when, in fact, at no point did [Mrs. Heffington] even proffer which questions that, if asked, would likely cause her to invoke the privilege."

The Heffingtons pray that we affirm the judgment of the Court of Special Appeals, asserting that the circuit court erred by failing to weigh the parties' interests regarding the motion to stay. Beginning with the timeliness of their motion to stay, the Heffingtons argue

11

that their motion was timely because the criminal trial was postponed only the week before the civil trial. They note that they filed their motion six days after the postponement.

Turning to the merits of the circuit court's decision, the Heffingtons argue that the circuit court failed to balance correctly the competing interests at stake. Specifically, they assert that the circuit court found incorrectly that Mrs. Heffington waived her Fifth Amendment right by testifying at her deposition. Because she was not indicted until after her deposition, they argue, she had no apprehension of criminal testimony and therefore no grounds for asserting a Fifth Amendment privilege. They note also that the circuit court did not mention in its ruling her right to access the courts. Further, they argue that delay would not harm the Mosers, only inconvenience them.

Addressing the Mosers' arguments, the Heffingtons contend that the Mosers cannot argue against the manner by which Mrs. Heffington asserted her Fifth Amendment privilege. The Mosers participated in the abbreviated trial procedure employed below, and the Heffingtons argue that their failure to object to the way Mrs. Heffington asserted the privilege precludes the Mosers from arguing on appeal that she improperly asserted the privilege.

The Heffingtons argue that their civil suit is not moot. Although Mrs. Heffington pled guilty to three criminal charges, they argue that she did not plead guilty to theft. The Heffingtons argue that the *nolle prosequi* of that count is affirmative evidence that supports their claims that the Mosers defamed Mrs. Heffington when they stated that she stole from the practice. Additionally, the Heffingtons point to *Mr.* Heffington's independent claims against the Mosers, asserting that they remain viable.

12

## V. Discussion

The Fifth Amendment to the United States Constitution provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The Fifth Amendment privilege applies to the states through the 14th Amendment. *Robinson v. Robinson*, 328 Md. 507, 514, 615 A.2d 1190, 1194 (1992). Although the language of the Fifth Amendment refers specifically to criminal cases, the privilege against self-incrimination applies in the civil context. *See McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S. Ct. 16, 17 (1924) (holding that the privilege does not depend upon the nature of the proceeding in which the testimony is sought and applies to both civil and criminal proceedings where the answer might incriminate the witness in a future criminal proceeding); *Mitchell v. United State*, 526 U.S. 314, 328, 119 S. Ct. 1307, 1315 (1999); *Robinson*, 328 Md. at 514–15, 615 A.2d at 1194. It follows that a plaintiff in a civil case may invoke the privilege and does not surrender her constitutional right by the filing of a civil action. *See Robinson*, 328 Md. at 515–16, 615 A.2d at 1194 (holding that invocation of the privilege by a party in a civil action allows for an adverse inference but does not change the burdens of proof); *McMullen v. Bay Ship Management*, 335 F.3d 215, 218 (3rd Cir. 2003) (holding that the privilege is available to civil plaintiffs).

The United States Supreme Court has made clear that the privilege against self-incrimination is one which should be exercised without penalty and that courts should avoid "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein*, 385 U.S. 511, 515, 87 S. Ct. 625, 628 (1967) (quoting *Griffin v. California*, 380 U.S. 609, 614 85 S. Ct. 1229, 1233 (1965)). In the context of a

13

civil proceeding, this constitutional protection creates tension between the plaintiff's right to protection against self-incrimination and a civil defendant's right to timely refute the underlying claim. *See, e.g., Serafino v. Hasbro, Inc*., 82 F.3d 515, 518 (1st Cir. 1996) (stating that, in a civil proceeding, "one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding"). In Maryland, citizens have under Article 19 of the Maryland Declaration of Rights a general right of access to the courts.[2] Thus, where an individual who initiates a civil lawsuit for damages is simultaneously defending herself against related criminal charges, proceedings must adequately protect the individual's overlapping rights to access the courts and assert the Fifth Amendment privilege without penalty. *McMullen*, 335 F.3d at 218 ("It is inconceivable that by exercising the constitutional right to bring or defend an action a person waives his or her constitutional right not to be a witness against himself or herself, and no case has so held." (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 2018 (2d ed. 1994)).

Courts have inherent power to stay proceedings before them. *Dodson v. Temple Hill Baptist Church, Inc.,* 254 Md. 541, 546, 255 A.2d 73, 75 (1969); *Waters v. Smith*, 27

---

[2] Article 22 of the Maryland Constitution's Declaration of Rights seeks to provide the same protection and is generally read in *pari materia* with the federal provision. *Robinson v. Robinson*, 328 Md. 507, 514, 615 A.2d 1190, 1194 (1992). Article 22 states as follows:

> "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

_____

Md. App. 642, 651–52, 342 A.2d 8, 13 (1975).  In *Landis v. North American Co.*, 299 U.S.

248, 57 S. Ct. 163 (1936), the United States Supreme Court discussed the power of courts

to stay proceedings, explaining as follows:

> ". . . the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.  Considerations such as these, however, are counsels of moderation rather than limitations upon power.  There are indeed opinions, though none of them in this court, that give color to a stricter rule.  Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger.  Such a formula, as we view it, is too mechanical and narrow.  All the cases advancing it could have been adequately disposed of on the ground that discretion was abused by a stay of indefinite duration in the absence of a pressing need.  If they stand for more than this, we are unwilling to accept them.  Occasions may arise when it would be "a scandal to the administration of justice" in the phrase of Jessel, M. R. (Amos v. Chadwick, L. R. 9 Ch. Div. 459, 462), if power to coordinate the business of the court efficiently and sensibly were lacking altogether.
>
> We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions.  Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."

*Id.* at 254–56, 57 S. Ct. at 166 (internal citations omitted).

Civil cases and simultaneous or successive criminal proceedings often overlap, creating parallel civil and criminal proceedings, as in the case here. Absent substantial prejudice, parallel proceedings ordinarily are permissible and not barred by the United States Constitution. *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980). Nevertheless, a court may exercise its discretion and grant a stay to protect parties involved in parallel proceedings. *Dodson*, 254 Md. at 546, 255 A.2d at 75; *Dresser Industries*, 628 F.2d at 1375-1376. The Court of Appeals for the District of Columbia recognized in *Dresser Industries* that "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Id.* at 1375–76. The court reasoned that the civil proceeding, if not stayed, might undermine the party's Fifth Amendment privilege against self-incrimination. *Id.* at 1376.

After considering the impact the proceedings may have on a party's Fifth Amendment rights, courts should exercise discretion by considering and weighing other factors relevant to the case. In *Federal Savings & Loan Insurance Corporation v. Molinaro*, 889 F.2d 899 (9th Cir. 1989), the United States Court of Appeals for the Ninth Circuit set out other factors a court should consider in granting or denying a stay, noting as follows:

> "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the

interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."

*Id.* at 902–03 (quoting *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980).

We review the stay ruling of the trial court for abuse of discretion, reversing only if no reasonable person would rule as the trial court did or when the trial court acts without reference to any guiding rules or principles. *Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. 534, 546, 72 A.3d 185, 191–92 (2013); *Wilson v. John Crane, Inc*., 385 Md. 185, 198-99, 867 A.2d 1077, 1084 (2005). But where the court's discretionary decision is based on an underlying legal determination, we review the legal determination *de novo*. *Fishman*, 433 Md. at 546, 72 A.3d at 192; *see also Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006). In *Wilson,* we explained the abuse of discretion standard as follows:

> "There is an abuse of discretion 'where no reasonable person would take the view adopted by the [trial] court[]'. . . or when the court acts 'without reference to any guiding principles.' An abuse of discretion may also be found where the ruling under consideration is 'clearly against the logic and effect of facts and inferences before the court[]'. . . or when the ruling is 'violative of fact and logic.'
> Questions within the discretion of the trial court are 'much better decided by the trial judges than by appellate courts, and the decisions of such judges should be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred.' In sum, to be reversed '[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that courts deems minimally acceptable.'"

17

*Id.* at 198-99, 867 A.2d at 1084.  In sum, an abuse of discretion "should only be found in the extraordinary, exceptional, or most egregious case."  *Id.* at 199, 867 A.2d at 1084.

### A.  Waiver of Fifth Amendment Privilege

One significant interest at stake was Mrs. Heffington's privilege against self-incrimination.  Petitioners argue that her testimony at her deposition waived the privilege, and the circuit court, in denying the motion to stay, found that there was "a good likelihood" that she waived the privilege "to a certain extent."  Because the question of whether Mrs. Heffington waived her Fifth Amendment privilege is a legal one, we review it *de novo* to determine its effect on the motion to stay.

The constitutional privilege against self-incrimination is read broadly "to extend to witnesses in civil litigation where the answer to interrogation *might tend to subject the witness to criminal prosecution*."  *Robinson*, 328 Md. at 514–15, 615 A.2d at 615 (emphasis added).  The privilege may be invoked in the discovery stage as well as at trial. *North River Ins. Co., Inc. v. Stefanou*, 831 F.2d 484, 486–87 (4th Cir. 1987); *Kramer v. Levitt*, 79 Md. App. 575, 582, 558 A.2d 760, 764 (1989).

But when a witness testifies to a subject, she waives the privilege for the rest of the "proceeding" to the extent necessary to cross-examine her on that subject.  *Mitchell v. United States*, 526 U.S. 314, 321, 119 S. Ct. 1307, 1311–12 (1999) (noting that "[i]t is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."); *Choi v. State*, 316 Md. 529, 542–43, 560 A.2d 1108, 1114 (1989) (holding that

18

when a witness answers "incriminating questions" at trial, she waives the privilege as to that subject). The rule aims to prevent "self-selected testimony" from distorting the facts. *Mitchell*, 526 U.S. at 322, 119 S. Ct. at 1312. Without it, a witness could testify to her version of events, then assert her Fifth Amendment privilege when confronted with conflicting information later in the same proceeding. In the words of the United States Supreme Court, the Fifth Amendment would be "a positive invitation to mutilate the truth a party offers to tell."[3] *Id.*

For Fifth Amendment purposes, a deposition and the trial in the same matter are stages of the same proceeding. *United States v. Parcel of Land*, 903 F.2d 36, 43 (1st Cir. 1990); *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1081 (10th Cir. 2009). In the instant case, Mrs. Heffington testified at her deposition to the details of the events underlying her claims. Her statements were "testimonial," meaning that they were made voluntarily under oath in the context of the same judicial proceeding. They were "incriminating," meaning that they did not merely deal with matters "collateral" to the events surrounding commission of a crime. These statements, which were both

---

[3] In considering the test for a testimonial waiver of the Fifth Amendment's privilege against self-incrimination, Judge Learned Hand wrote in *United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1942), *cert. dismissed*, 319 U.S. 41, 63 S. Ct. 910 (1943), the following:

> "It must be conceded that the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition. The time for a witness to protect himself is when the decision is first presented to him; he needs nothing more, and anything more puts a mischievous instrument at his disposal."

"testimonial" and "incriminating," contained information that Mrs. Heffington was privileged not to reveal. Plainly, she had reason to know that her statements would put her in jeopardy, and thus it is not unfair to find that she waived her privilege. By testifying to that subject within the same proceeding, she waived her Fifth Amendment privilege and would be unable to invoke it at trial, at least to the extent necessary for petitioners to cross-examine her on it.

The Court of Special Appeals held that Mrs. Heffington did not waive her Fifth Amendment privilege by testifying at her deposition and not claiming the privilege. The court declined to address whether her testimony in the deposition was part of the same "proceeding," holding instead that "[b]ecause [Mrs. Heffington]'s indictment created 'new grounds for apprehension,' one cannot reasonably infer from her pre-indictment deposition testimony a waiver of her Fifth Amendment privilege post-indictment." *Heffington*, 238 Md. App. at 530–31, 192 A.3d at 912 (internal citations omitted). The court reasoned that at the time of her deposition, Mrs. Heffington knew only that the police might be investigating her conduct. The indictment followed her deposition testimony and gave her a new reason to assert the privilege against self-incrimination, citing and relying on *In re Morganroth*, 718 F.2d 161, 165 (6th Cir. 1983), as support. We disagree. It should be clear to any person in Mrs. Heffington's situation that any testimony that she gave might tend to subject her to criminal prosecution, especially since the police investigation had not been closed.

We believe *Morganroth* to be inapposite in evaluating appellant's claim of privilege for several reasons. First, *Morganroth* involved clearly different proceedings, not the same

proceeding. And as we have noted, waiver of the privilege at a deposition waives the privilege at the trial of the same case. Morganroth testified voluntarily in a 1979 civil deposition, answering questions about his involvement in a loan transaction. *Id.* at 163. He testified subsequently at a grand jury proceeding, where he invoked his Fifth Amendment privilege, and the government gave him immunity, thereby compelling his testimony. *Id.* Then, in 1981, he was deposed in a separate civil action but refused to answer questions about the transaction. *Id.* at 164. His 1979 and his 1981 depositions were not part of the same proceeding.

Second, the Court of Special Appeals held, based on *Morganroth*, that the criminal indictment created "new grounds for apprehension" and, hence, permitted or revived the privilege. Notably, Morganroth articulated the new grounds for apprehension—he alleged that he was apprehensive of providing incriminating evidence in regard to a possible perjury charge stemming from his responses in an earlier proceeding under oath. *Id.* at 167. Significantly, the *Morganroth* court required more than that assertion, noting that before Morganroth would be entitled to remain silent, there must be a valid assertion of the Fifth Amendment privilege. *Id.* at 167. The court made clear that a blanket assertion of the privilege is not sufficient, that the privilege cannot be claimed in advance of the questions, and that it must be asserted by a witness with respect to particular questions. *Id.* And in each instance, the witness must testify under oath to a "sound basis" for the new apprehension of prosecution. *Id.*, *see also Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951) (requiring a witness claiming the Fifth Amendment privilege to do so for specific questions for which "the witness has reasonable cause to apprehend

21

danger from a direct answer"). The court must determine the propriety of the refusal to testify. *Morganroth*, 718 F.2d at 167.

Nothing of the sort occurred here. Mrs. Heffington's counsel simply stated to the court that Mrs. Heffington intended to assert her Fifth Amendment privilege. She did not testify under oath that she had any new basis for apprehension of criminal prosecution and never mentioned fear of a criminal charge of perjury.[4] She did not assert the privilege as to particular questions but merely, through counsel, asserted a blanket privilege. *Morganroth* is no aid to respondents.

## B. The Circuit Court's Denial of the Stay

Because Mrs. Heffington waived her Fifth Amendment privilege on the subject of her fraudulent transactions by testifying in her deposition to that subject, the circuit court did not abuse its discretion in denying the stay. The court found correctly that it should weigh Mrs. Heffington's Fifth Amendment interest lightly in balancing the interests at stake. The court balanced the Heffingtons' interest in Mrs. Heffington attempting to assert a Fifth Amendment privilege at trial against the Mosers' discovery and trial preparation expenses as well as the Mosers' interest in a timely resolution of the civil case.

---

[4] At the hearing on the motion to stay, counsel for Mrs. Heffington stated only that after discovery, the Mosers had "a better chance of actually trapping her into saying something that could, quite frankly, impact her criminal case."

_____

We address briefly the Court of Special Appeals's holding that the trial court failed

to consider in its analysis Article 19 of the Maryland Declaration of Rights.  Article 19

states as follows:

> "That every man, for any injury done to him in his person or
> property, ought to have remedy by the course of the Law of the
> land, and ought to have justice and right, freely without sale,
> fully without any denial, and speedily without delay, according
> to the Law of the land."

To be sure, the people have a right of access to courts.[5]   Article 19 ensures that rights

belonging to citizens of Maryland are "not illegally or arbitrarily denied by the

---

[5] In *Jacome de Espina v. Jackson*, 442 Md. 311, 335, 112 A.3d 442, 457 (2015), we noted
that Article 19 essentially protects two interrelated rights, a right to a remedy for an injury
to one's person or property and a right of access to the courts.   We set out the history of
Article 19 in *Piselli v. 75th St. Med.*, 371 Md. 188, 205, 808 A.2d 508, 518 (2002),
explaining as follows:

> "Article 19 was part of the original Maryland Declaration of
> Rights adopted in 1776, although it was then designated as
> Article 17 of the Declaration of Rights. Except for one word,
> the wording today is identical to the 1776 wording.  All of the
> original state constitutions adopted at the time of the
> Revolutionary War, except Virginia's and North Carolina's,
> contained provisions like Article 19.  While the United States
> Constitution contains no comparable provision, today the
> constitutions of 39 states have clauses similar to Article 19.
> These provisions, often referred to as 'Remedy Clauses' or
> 'Open Courts Clauses' or 'Access to Courts Clauses,' are
> based on Chapter 40 of the Magna Carta or, more particularly,
> Lord Coke's interpretation of Chapter 40 . . .
>     Today's language refers to 'every man,' whereas the
> 1776 language referred to 'every freeman.'  In light of the
> Equal Rights Amendment [to the Maryland Constitution],
> which is Article 46 of the Declaration of Rights, adopted in
> 1972, the provision should be read as 'every person.'"

(Internal citations omitted.)

government." *State v. Board of Education,* 346 Md. 633, 647, 697 A.2d 1334, 1341 (1997). Nonetheless, our cases emphasize that access to the courts is subject to reasonable regulation. *Doe v. Doe*, 358 Md. 113, 128, 747 A.2d 617, 624 (2000); *Johnson v. Maryland State Police,* 331 Md. 285, 297, 628 A.2d 162, 168 (noting that a "restriction upon access to the courts violates Article 19 only if the restriction is unreasonable"). The applicability of Article 19 was neither raised nor briefed in the trial court or before the Court of Special Appeals. To the extent that the Heffingtons raised Article 19 of the Maryland Declaration of Rights and their right to access to the courts, the trial court balanced that interest in considering the stay although not explicitly referencing Article 19. The right of access to the courts was implicit in the trial judge's analysis and reasoning.

The trial court noted that the stay would be for an undefined or indefinite duration because there was no guarantee that the criminal trial would begin on the scheduled date or conclude as quickly as "the usual two- or three-day trial." Postponing repeatedly the civil proceedings would be a burden on the Mosers as well as an inconvenience to the court and docket considerations, as the case was assigned specifically to a judge. Similarly, the court noted that the motion to stay was filed "somewhat late" in the proceedings, months after the Heffingtons knew of the indictment.

A trial court abuses its discretion only when its decision is manifestly unreasonable or is based on untenable grounds. Mrs. Heffington waived her Fifth Amendment privilege to the extent necessary to cross-examine her on the conduct at issue, and a stay would cause

24

substantial expense and uncertainty for the Mosers. The decision of the circuit court to deny the stay was not based upon an incorrect standard, was not manifestly unreasonable, and hence was not an abuse of discretion.

A party is entitled to a motion for judgment "when the evidence at the close of the case, taken in the light most favorable to the nonmoving party, does not legally support the nonmoving party's claim or defense." *Giant Food, Inc. v. Booker*, 152 Md. App. 166, 177, 831 A.2d 481, 487 (2003); Rule 2-519. In this case, the Heffingtons argued that they were unable to pursue their claims in the absence of a stay. When the court denied the stay, the Heffingtons presented no evidence, and the Mosers moved for judgment in their favor. The Heffingtons consented, stating "Plaintiffs cannot argue against that, Your Honor." The trial court did not err in granting the Mosers' motion for judgment.[6]

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY. COSTS IN THIS COURT TO BE PAID BY RESPONDENTS.**

---

[6] We need not address petitioners' mootness argument because of our holding that the trial court did not abuse its discretion in denying the motion to stay.